# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NADIA KHAN, | ) | CASE NO. 3:23-cv-00003 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ELRAC, LLC, | ) | MARCH 29, 2024 |
| *Defendant*. | ) | |

## MEMORANDUM OF DECISION
### RE: DEFENDANT'S MOTION TO DISMISS (ECF NO. 25)

Kari A. Dooley, United States District Judge:

Plaintiff Nadia Khan ("Plaintiff") brings this action against Defendant ELRAC, LLC ("Defendant"), her former employer, alleging gender discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(b)(1), and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et. seq*. Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant moves to dismiss on the ground that Plaintiff has failed to state a claim for which relief can be granted. For the reasons that follow, the motion is GRANTED in part and DENIED in part.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). When reviewing a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations in the Complaint, taken as true, and to documents attached to, incorporated by or otherwise integral to the Plaintiff's complaint. *See Mercer v. Schriro*, 337 F. Supp. 3d 109, 134 (D. Conn. 2018); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

**Allegations**

Defendant is a limited liability company that operates a rental car business in locations throughout the country. Am. Compl. ¶¶ 2-3. In or around 2019, Plaintiff began working for Defendant in various business locations in New York in the position of "management trainee." *Id.* ¶¶ 4-5. In or around October 2020, Defendant transferred Plaintiff to a business location in Hamden, Connecticut, this time in the position of "Assistant Manager." *Id.* ¶ 6.

Plaintiff alleges that Defendant employs a "boiler room" business strategy, by which it hires young college graduates as "management trainees" and expects them to work 60 hours a week, 6 or more days per week, selling high-margin insurance products to rental customers. *Id.* ¶ 7. Plaintiff further alleges that Defendant expects to "churn and burn" through employees in the management trainee pipeline who "burn-out" after a short period of time on the job. *Id.* Because of this business strategy, Plaintiff contends that Defendant was hostile to female employees in the management trainee pipeline because of their need to take time off for things like childbirth, childcare, or health issues for themselves or their children. *Id.* ¶ 8.

During her employment with Defendant, Plaintiff became pregnant and required time off to give birth and to recover from childbirth in June of 2020. *Id.* ¶ 9. While Plaintiff was taking her maternity leave, Plaintiff alleges that Defendant's management pressured her to cut her maternity leave short and come back earlier than she was ready or capable of doing. *Id.* ¶ 10. Subsequently, Plaintiff became Assistant Manager in Hamden, and was required to take time off to care for her son when he became ill. *Id.* ¶ 11. Plaintiff alleges that her Area Manager, Emily Crnic, became upset by Plaintiff's request for time off, and told her that in the future, she would need to give at least thirty days' notice if she needed time off. *Id.* ¶ 12. Plaintiff's son then developed chronically inflamed adenoids, a condition for which he ultimately required surgery. *Id.* ¶ 13. Plaintiff scheduled the surgery for March 23, 2022, and notified Defendant via email of her need to take time off in connection with her son's surgery. *Id.* ¶ 14. Plaintiff was out of work from March 23, 2022, through March 28, 2022, tending to her son following his surgery. *Id.* ¶ 15. After Plaintiff returned to work, Defendant's management immediately instigated an "investigation" into Plaintiff's purported "improper use of a rental vehicle," which had supposedly occurred weeks prior. *Id.* ¶ 16. Plaintiff alleges that this investigation was a "sham" designed to generate a pretext for terminating Plaintiff because she had needed time off to care for her young child, and because of Defendant's perception that she would need future time off to continue caring for her child. *Id.* ¶ 17. Defendant terminated Plaintiff's employment on April 5, 2022. *Id.* ¶ 18.

**Discussion**

*Gender Discrimination under the CFEPA*

The CFEPA prohibits gender discrimination in the workplace, providing in relevant part:

(b) It shall be a discriminatory practice in violation of this section: (1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against any individual in compensation or in terms,

conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression…;

Conn. Gen. Stat. § 46a-60(b)(1). To state a claim for discrimination under the CFEPA, "a plaintiff must plausibly allege, 'in the absence of direct evidence of discrimination,' that he 'is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Cobb v. Atria Senior Living, Inc.*, No. 3:17-CV-00291 (MPS), 2018 WL 587315, at *3 (D. Conn. Jan. 29, 2018) (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)). "As to the last prong, the facts pled need only give 'plausible support to a minimal inference of discriminatory motivation.'" *Sellers v. First Student, Inc.*, No. 16-CV-236 (JCH), 2016 WL 6440111, at *4 (D. Conn. Oct. 28, 2016) (quoting *Littlejohn*, 795 F.3d at 311). Because the crux of an employment discrimination claim is that the plaintiff suffered injury on the basis of a protected status, the plaintiff must "set forth factual circumstances from which discriminatory motivation may be inferred," which can be done either with allegations of disparate treatment or with direct evidence of discriminatory animus such as discriminatory remarks. *Shlafer v. Wackenhut Corp.,* 837 F. Supp. 2d 20, 25 (D. Conn. 2011) (citing *Patane v. Clark*, 508 F.3d 106, 112–13 (2d Cir. 2007); *Driscoll v. Bob's Disc. Stores*, No. 3:21-CV-00257 (KAD), 2021 WL 3568894, at *2 (D. Conn. Aug. 11, 2021). "Discrimination claims asserted under the CFEPA 'are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green* for parallel federal claims under Title VII.'" *Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39, 49 (D. Conn. 2023) (citing *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019).

While Defendant does not dispute that Plaintiff is a member of a protected class who was qualified for her position and suffered an adverse employment action, it maintains that allegations plausibly supporting an inference of discriminatory intent are "glaringly absent" from the Amended Complaint. Def. Mot. to Dismiss at 7, ECF No. 25-1. The Court agrees. In support of her CFEPA gender discrimination claim, Plaintiff asserts that Defendant was "hostile" to female employees generally because of their need to take time off work for childbirth and childcare, that Defendant's management pressured Plaintiff to cut her maternity leave short in 2020, and that she was terminated because of her son's childcare needs. Am. Compl. ¶¶ 8-10, 16-20. Plaintiff's conclusory accusation that Defendant is generally hostile to female employees is not entitled to a presumption of truth nor a basis upon which an inference of discriminatory animus may be drawn. *See Cobb*, 2018 WL 587315 at *3  (conclusory assertions that plaintiff faced animus due to his gender were insufficient to state a claim under CFEPA); *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 720 (E.D.N.Y. 2015) (generalized assertions of discrimination in the workplace insufficient to establish adverse employment action in Title VII claim). Plaintiff's allegation that she was pressured to cut short her maternity leave in 2020 similarly fails to create an inference of discriminatory intent at the time of her termination in 2022, nearly two years later. A single event that occurred in 2020 cannot give rise to an inference of gender-based discrimination or retaliation in 2022. *See Hasemann v. United Parcel Serv. of Am., Inc.*, No. 3:11-CV-554 (VLB), 2013 WL 696424, at *7 (D. Conn. Feb. 26, 2013) (allegedly discriminatory comment made months prior to plaintiff's termination could not support an inference of discriminatory intent because it was too remote in time); *Asante-Addae v. Sodexo, Inc.*, No. 3:13-CV-00489 (VLB), 2015 WL 1471927, at *13 (D. Conn. Mar. 31, 2015), aff'd, 631 F. App'x 68 (2d Cir. 2016) (one-and-a-half years between allegedly discriminatory comments and plaintiff's termination was a "significant gap" that

rendered the comments too remote in time to support an inference of discriminatory intent). The motion to dismiss Count One is GRANTED.

*FMLA Violations*

Section 2615(a)(1) of the FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1); *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004). The regulations promulgated pursuant to the FMLA provide that "interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave … and that an employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave." *Id.*, citing 29 C.F.R. § 825.220.

The FMLA provides "broad protections to employees who need to take time away from work to deal with serious health conditions of the employee or her family." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 165–66 (2d Cir. 2017) (citation omitted). Specifically, it entitles qualified employees to a total of 12 workweeks of unpaid leave per year for personal matters, including in order to care for close family members that suffer from serious health conditions. 29 U.S.C § 2612. Under the FMLA, an employee has the right to return to the position she held before taking leave, or to an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B). To enforce these rights, the FMLA "creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction should that employer interfere with, restrain, or deny the exercise of FMLA rights." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (internal quotation marks

omitted). FMLA claims "come in at least two varieties: interference and retaliation." *Woods*, 864 F.3d at 166. Interference occurs "when [an] employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Id.* Retaliation occurs when an employee exercises rights under the FMLA and then is subject to adverse employment action by the employer. *Id.* "The two types of claims serve as *ex ante* and *ex post* protections for employees who seek to avail themselves of rights granted by the FMLA." *Id.*[1]

Here, Plaintiff alleges both retaliation and interference claims against Defendant in Counts Two and Three of the Amended Complaint.

### 1. FMLA Retaliation – Count Three

FMLA retaliation claims are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Potenza*, 365 F.3d at 167. Under this framework, a plaintiff must first establish a prima facie case of discrimination. *Id.* at 168. If the plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate "a legitimate, non-discriminatory reason for its actions." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016). If the employer meets this burden, "the plaintiff must then show that defendant's proffered explanation is pretextual," *id.,* and that the plaintiff's use of FMLA leave was a motivating factor in the adverse employment decision. *Woods,* 864 F. 3d at 166.

To state a prima facie case in the first step, a plaintiff must establish that (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza*, 365 F.3d at 168. "[B]ecause a temporary

---

[1] In *Woods,* the Second Circuit made clear that retaliation claims are themselves a form of interference under § 2615(a)(1). *Id.* at 166-167.

presumption of discriminatory motivation is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (internal citations and quotations omitted).

Defendant argues that Plaintiff has not sufficiently alleged that her son suffered from a serious health condition, as required for any viable FMLA interference or retaliation claim. Def. Mot. at 13. Defendant additionally asserts that Plaintiff has not alleged that she provided Defendant with notice of her need for FMLA leave, as required by the FMLA and its accompanying regulations. *Id.* at 14. Lastly, Defendant urges the Court to find Plaintiff's FMLA interference claim as redundant of her FMLA retaliation claim. *Id.* at 15. The Court takes up each of these arguments in turn.

To qualify for FMLA leave, and accordingly to establish that she exercised a right protected by the FMLA, Plaintiff had to allege that she or her son had a "serious health condition," defined as "an illness, injury, impairment, or physical or mental condition that involves" either "inpatient care" in a medical facility or "continuing treatment by a health care provider." 29 U.S.C. § 2611 (11)(A)–(B); *see also* 29 C.F.R. § 825.113(a). Plaintiff has adequately alleged such a condition. The Amended Complaint alleges that Plaintiff's young son developed chronically inflamed adenoids, for which he eventually required surgery. Am. Compl. ¶¶ 13-14. Plaintiff clarifies in her opposition to Defendant's motion that the surgery was an adenoidectomy. Pl. Opp. to Def. Mot. to Dismiss at 4-5, ECF No. 33-1. Drawing all available inferences in Plaintiff's favor, Plaintiff has plausibly alleged that her son suffered from a serious health condition for the purposes of FMLA leave. Plaintiff alleges that her son's condition was "chronic," and for which he "ultimately" needed surgery, allowing the reasonable inference that it was a condition which required

continuing treatment as contemplated by the Department of Labor's regulations prescribing qualifying health conditions.[2]

Plaintiff also adequately alleged that she provided Defendant with the requisite statutory notice of her need for FMLA leave. The FMLA requires employees to provide to employers, whenever possible, at least thirty days' notice for planned treatment or for leave that is otherwise foreseeable. 29 U.S.C. § 2612(e)(1). "Where treatment or a qualifying reason for FMLA leave is unforeseeable, however, the applicable regulations only indicate that an employee must notify his or her employer as soon as practicable." *Slaughter v. Am. Bldg. Maint. Co. of New York*, 64 F. Supp. 2d 319, 325 (S.D.N.Y. 1999) (citing 29 C.F.R. § 825.303(a) (internal quotations omitted). The Department of Labor has interpreted the phrase "as soon as practicable" to mean "as soon as practicable under the facts and circumstances of the particular case," and "[i]t is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." *Id.*; 29 C.F.R. § 825.303(a). Again drawing all inferences in Plaintiff's favor, Plaintiff has alleged that she notified Defendant of her need for time off in connection with her son's surgery. Am. Compl. ¶ 14. Plaintiff need not include factual allegations that address each of the various scenarios under which the adequacy of the notice is determined. At the motion to dismiss stage, the Court draws the inference that the notice was timely and that Plaintiff has satisfied her minimal burden. *See Blake*, 655 F. Supp. at 46 (finding that plaintiff had alleged sufficient notice for FMLA leave request even though she did not specify the form of the request, to whom she submitted the request,

---

[2] *See* 29 C.F.R. § 825.115 ("A serious health condition involving continuing treatment by a health care provider includes … Chronic conditions. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
(3) May cause episodic rather than a continuing period of incapacity …").

Case 3:23-cv-00003-KAD   Document 45   Filed 03/29/24   Page 10 of 12


details of the absences requested, or how she documented her foster children's alleged serious health conditions).

Plaintiff has also plausibly alleged an inference of retaliatory intent on the part of Defendant. Plaintiff alleges that after informing Defendant of her need to take time off, she was out of work from March 23, 2022, through March 28, 2022, caring for her son following his surgery. Am. Compl. ¶ 15. Following her return, she was "immediately" subjected to what she alleges was a "sham investigation" which ultimately resulted in her termination on April 5, 2022. *Id.* ¶¶ 16-17. The close temporal proximity between Plaintiff's return from leave and her subsequent termination supports an inference of retaliatory intent. "Temporal proximity can be sufficient to create an inference of retaliatory intent." *Bowman v. CSX Transp., Inc.*, 22 F. Supp. 3d 181, 192 (N.D.N.Y. 2014) (collecting cases); *see also DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987). Indeed, the time between leave and adverse employment action here appears to be less than two weeks, much less than what has been held sufficient to plead retaliatory intent in other cases in this Circuit. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 111 (2d Cir. 2010) (finding that plaintiff sufficiently alleged prima facie retaliation where her protected activity occurred "at most two months" before termination); *Risco v. McHugh*, 868 F. Supp. 2d 75, 114 (S.D.N.Y. 2012) (a gap of less than two months between the protected activity and the plaintiff's termination was sufficient to state retaliatory animus); *Blake*, 655 F. Supp. at 47 (gap of less than four weeks sufficient to allege retaliation at motion to dismiss stage). Defendant's motion to dismiss Count Three, the FMLA retaliation claim, is accordingly DENIED.

### 2.  FMLA Interference – Count Two

As noted *supra*, retaliation for the exercise of FMLA rights is itself an actionable form of interference under §2615(a)(1). Here, Defendant argues that Plaintiff's separately pled interference

claim is wholly redundant of her retaliation claim insofar as Plaintiff's allegations in support of the interference claim are "virtually identical" to the allegations supporting her retaliation claim. Def. Mot. at 15. The Court agrees. To establish FMLA interference, a plaintiff must establish "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio*, 817 F.3d at 424. Here, Plaintiff does not allege any *ex ante* conduct on the part of Defendant that impacted her rights under the FMLA. *See Woods,* 864 F. 3d at 166. Nor does Plaintiff plead allegations asserting that she was discouraged from taking FMLA leave such that a similarly situated employee of ordinary resolve would have been dissuaded from taking that leave. *See De Figueroa v. New York,* 403 F. Supp. 3d 133, 155 (E.D.N.Y. 2019) (noting that "a plaintiff may plausibly allege the fourth and fifth elements of an interference claim if her allegations establish that the employer's purported acts of discouragement would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise ... her FMLA rights") (internal citations and quotations omitted). Rather, her interference claim derives entirely from her allegation that "Defendant interfered with [her] right to take leave under the FMLA in that it failed to restore her to her position[3] following her leave in order to care for her son's … serious health condition." Am. Compl. ¶ 23. In other words, Plaintiff asserts that Defendant interfered with her right to take FMLA leave by terminating her in response to her actual taking of such leave, an allegation that is indistinguishable from Count Three, in which Plaintiff alleges that Defendant retaliated against her by terminating her employment. *Id.* ¶ 23. Such a theory of "interference by

---

[3] It was precisely this right – the right to return to the same or a comparable position – that led the Second Circuit in *Woods* to conclude that retaliation in the form of termination, which interfered with this right of return, is a form of interference under Section 2615(a)(1). *Woods,* 864 F. 3d at 167.

termination is merely a retaliation theory in disguise." *LeClair v. Berkshire Union Free Sch. Dist.*, No. 1:08-CV-01354 (LEK) (RFT), 2010 WL 4366897, at *6 (N.D.N.Y. Oct. 28, 2010) (denying FMLA interference claim where crux of plaintiff's claim was that defendant terminated her employment as a response to past absences); *Blake*, 655 F. Supp. at 48 (denying interference claim where plaintiff's theory was premised on the fact that by terminating her, defendant prevented her from exercising rights she would have had if she had remained employed). The motion to dismiss Count Two is therefore GRANTED.

**Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. The motion to dismiss is GRANTED as to Counts One (CFEPA - gender discrimination) and Two (FMLA Interference) and DENIED as to Count Three (FMLA retaliation).

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of March 2024.

> /s/ Kari A. Dooley
> KARI A. DOOLEY
> UNITED STATES DISTRICT JUDGE